United States v. Singer 23-6120. Council, you may proceed. Good morning, may it please the court. My name is Laura Deskin. I'm an assistant federal public defender and I represent Appellant Singer. This is a case about whether Oklahoma's A&B with a dangerous statute is a violent felony or a crime of violence. It turns on whether the term person is reserved exclusively for those who have been born alive or whether that word's plain and ordinary meaning includes a fetus, specifically a viable fetus. Oklahoma's Court of Criminal Appeals has held three times that a viable fetus is protected from harm in the criminal context. And I'm going to explain to you why the Hughes holding that 1994 case encompasses assault and battery with a dangerous weapon. Hughes was dealing with the term human being in the homicide statute, but it then expressly overruled Harbert, a case which had held that a viable fetus is not a person within the meaning of 652, the assault and battery with a deadly weapon statute. It didn't analyze that statute specifically. It just called it an assault and battery. The term person does not actually appear in the deadly statute. It is in the definition for battery. I believe they were rejecting the idea that person in terms of the battery statute only applies to those born alive. They were saying a battery can occur on a viable fetus and that that is the harm that statutes like assault and battery statutes are meant to protect people, including a viable fetus. And that is why they stated in green that just as a viable fetus may be the victim of assault and battery with a dangerous weapon, he or she may be a victim of child neglect. The statutes all protect people from harm. Homicide, assault and battery, child neglect. You would agree though that 645 doesn't mention fetus, does it? 645 does not mention fetus. That is correct. Let me just quickly follow up. So Hughes was decided in 94 and then the legislature amended section 652 in 2005 effectively codifying Hughes. Would you agree with that? I think that they codified Hughes but they went further than Hughes did and that is critical here. So that was in 1994 that Hughes happened and then in 2005, 11 years later, the Oklahoma legislature actually went farther and I think that was intentional. So in Hughes they held that the plain and ordinary meeting of a person includes a viable fetus and beyond. Did they say viable? They did. They said viable repeatedly. Except for abortion and medical standards of care, correct? There was an exception in the statute? Oh no, I'm talking about in the Court of Criminal Appeals and the cases. I'm talking about the statute. And in the statute, they are, and this is critical, they went further. Yes, they specifically defined, they included, they expanded the definition of person to include every stage of a development from conception and beyond. They didn't draw the line of viable? They did not draw the line of viable. They specifically referred to the definitional statute of unborn child in the abortion statute. All right. Then in 2006, it amended section 691, that's the homicide to cover unborn, correct? The same thing, yes. But then it amended 645 and it didn't alter it to cover... then how can it cover viable or... Because the term person encompasses, in its plain and ordinary meeting under Oklahoma case law, means viable fetus and beyond. But the legislature had an opportunity to do it then and there and they didn't do it. It seems like you're asking us to do it that is to amend 645 to include fetuses as victims despite the fact that the legislature chose not to do it in 2006. I don't think that's true and the reason is because it's the plain and ordinary meaning of person. They didn't need to amend it for the assault and battery with the dangerous statute. They were talking about instances... What do you mean they didn't need to do it? They just felt the need to do so in the other two statutes. So why not make it consistent? Because in the other statutes, they wanted to include from conception and beyond. They wanted to for all homicides and for assault and battery with a deadly, which is included in that chapter. But isn't this an argument that should have been made to the legislature? Shouldn't it still be an that they believe the plain and ordinary meaning of person in this context includes a viable fetus and beyond. The legislature wanted to go beyond in those particular statutes and say no in those we mean from conception and beyond. Under your interpretation, would you include exceptions? For in the assault and battery with a dangerous statute? Yes. No, I would not. I think it probably becomes in terms of that there's no... Assault and battery with the deadly is charged generally when you're thinking in terms of a fetus when somebody is quite pregnant. Assault and battery with the dangerous, you could have injury on a fetus, but you would have a very hard time proving that in those early stages, conception and beyond. So viable fetus and beyond makes a big difference in terms of how you would ever prove that assault and battery with a dangerous cause to harm. But how do we know? We've got these other two statutes that expand it to conception. You want to have a difference and have it be viable? Yes, following case law. Shouldn't that kind of line drawing be done by the legislature? Well, I think because of Oklahoma's case law and the way it's developed, I just don't believe it was necessary. But the case law was there. That was the background case law for the legislature to act upon. And they didn't do it when they amended 645. It's true. It sat there for 11 years with person including a viable fetus and beyond before any amendments were made. They only did it to the deadly and homicide. We also have the Green and Allen cases, which extended to criminal child neglect. That statute has not been amended. And it was also done on the plain and ordinary meaning of child in that context with reference to Hughes. Counselor, before you move on, I'm wondering what you think about certifying this question to the Oklahoma Court of Criminal Appeals, given what you just spent your time talking about? Well, I hadn't thought about that before. But I mean, I don't think there's any harm that could come from that. I find it hard to believe that our Oklahoma legislature would come out and say, no, our intention is not to protect a viable fetus from harm when an assault and battery is with a dangerous weapon rather than a deadly weapon. So it is something that, you know, you could certify to the legislature to find out. Particularly with the significant sentencing consequences here, right? I mean, correct. We can't guess. Right. I agree. Well, you almost said certify to the legislature. Seems like that's really the legislature that needs to make this decision, doesn't it? Well, I believe that decision has already been made because of this case law that they only believe... By the legislature. By the legislature. You think the legislature's made the decision? I do. I think that the case law shows that in Oklahoma, the plain and ordinary meaning of a person in this context encompasses a viable fetus and beyond. When you say in this context, could you be more precise? Because there's a large body of case law. So when you say in this context, what do you mean? Right. In Hughes, they were talking about in statutes that are meant to protect harm and injury to people. So that would be the homicide statutes and the assault and battery statutes is really what I'm talking about here. This type of harm. I wanted to see if there was any other points I wanted to hit. I think that's it. If there are no more questions, I'll reserve the rest of my time. Thank you. Good morning and may it please the court. DH Dillbeck on behalf of the United States. Under Oklahoma law, only a person born alive and not the unborn can be a victim of assault battery with a dangerous weapon. The felony's text and its statutory history supports that interpretation and the Oklahoma Court of Criminal Appeals has never ruled otherwise. In fact, it's now twice adopted uniform jury instructions that follow that interpretation. It's done so most recently in March of this year after all the briefing was filed in this appeal. This offense is thus a violent crime. There was a decision in March. The revisions to the jury instructions were issued by the court in March, issued in the form effectively of a published opinion. That, for the court's reference, can be found in 2024 OKCR 6. I think all that might be helpful if you send those in with the 28J. Sure, I'd be happy to. And I'd be happy to discuss that now because I think it has some bearing on how the Court of Criminal Appeals views its decisions in both the Hughes case and especially in the Green decision more recently. Just briefly by way of context on this jury instruction issue, in 2006 the Court of Criminal Appeals adopted and issued revised jury instructions that included for the first time an unborn child instruction. That instruction says person for certain felonies includes an unborn child and that list which felonies it applies to, that list includes assault and battery with a deadly weapon and the homicide felonies and in that the instruction follows the recent revisions, Judge Matheson, that you had discussed. But in March of this year the Court adopted revised jury instructions for both the child neglect felony, the statute that was at issue in the Green decision. The revision to the dangerous weapons statute included a broadened definition of what counts as a dangerous weapon and that it follows a revision to the statute itself that occurred in 2006. The revision to the child neglect statute now includes a note that explicitly references the Green decision and says that the felony can apply to neglect of an unborn child but importantly nothing like that kind of note now exists in the revised version of the instruction for assault and battery with a dangerous weapon. I think that's important because it tells us something about what the Court of Criminal Appeals sees the reach of the Green decision especially to be. Presumably if it thought as the appellant has suggested that Green squarely held that not only the child neglect felony but also the assault and battery with a dangerous weapon felony covered unborn victims, then it wouldn't have made the revisions that it did. And Judge Matheson, if I may, you asked a line of questions about the statutory history of the various violent felonies at issue here. Why I rightly noted in 2005 and 2006 the deadly weapon felony and the homicide felony were amended to include unborn victims. Dangerous weapon felony was also amended but not to include unborn victims and it doesn't take any kind of wild leap of imagination to see that as a conscious decision on the legislature's part. The legislature decided that the most serious violent felonies, the ones that posed the deadliest, the most serious life-threatening harm, should have the broadest possible reach, afford the widest possible protection in a way that shouldn't be true for a lesser violent felony like assault and battery with a dangerous weapon. I think the legislature has made it clear what it intends the scope and reach of these various violent felonies to be. So counsel, why wouldn't we certify and actually ask the Oklahoma Court of Criminal Appeals, ask them to answer this question? Judge, I don't think that's necessary given the evidence before this court. And I appreciate that. I get your argument. I'm asking you though, would there be reason not to certify? Yes, because I think the evidence from the text and the statutory history alongside this evidence from the jury instructions make it clear what the best interpretation of this statute is. Okay, I'll rephrase it. Why wouldn't we let them make that conclusion rather than us as a federal court? I think the question for this court is what's the best reading of the statute? And given that the Court of Criminal Appeals has never said anything contrary about this particular statute, I think this court, given the fact that the statute itself simply says person and not the unborn like some of the other I don't think it's impinging in any improper way on the Court of Criminal Appeals and its authority to construe Oklahoma criminal law for this court to say yes, given what the text says, what the legislature's done, and the limited scope of prior opinions, that yes, we are in a position to make a determination about the best interpretation of this statute. That it says person and we'll read it simply as person not to include the unborn given how other violent felonies have been amended. Thank you. Let me just ask you why we have we have these the cases in Hughes and Green. We have the amendments to the homicide, the deadly force laws. We have the similarities of 645 to 652 and 843.5 which is the child neglect. You take all those together. Doesn't that at least raise some uncertainty as to whether section 645 applies to fetuses and if there's some uncertainty then we run into the categorical approach calling for a clear coverage of the federal statute or the federal definition to the state statute. I mean as long as as long as the defense can can can raise some uncertainty about that, don't you have a problem under the categorical approach? I don't think there is some uncertainty because of the unique statutory history of section 645. The the child neglect felony that was at issue in the Green case, there's there's no comparable kind of statutory history showing a conscious decision on to include the unborn as victims in the way that was true in 2005 and 6 for section 645. Can I just jump in there? So when you say conscious decision, what do we have other than the fact that the statute wasn't amended, do we have anything else to say that this was a conscious decision? What's the evidence of that? I think the clearest evidence of a conscious decision is the fact that the legislature did contemporaneously amend section 645. But I guess I'm we don't have any other reason to think that oh they looked at this statute and said oh we don't want to amend it. Do we have anything like that? I'm not aware of any kind of legislature history that would suggest there was a you know a proposed amendment that was debated and and voted down. There's no there's no legislative history of that kind. I think the consciousness is just apparent again in the contemporaneous natures of the of the actual amendments themselves. Counsel if we're not wholly persuaded by the government's reading in response to to Judge Matheson's question, if there is some lurking uncertainty here, how does that resolve in the government's favor under the categorical approach? Well I would say that if at the end of the day this court is not persuaded by the evidence that we've presented, then I think that brings us back to Judge Ide's question a moment ago about certifying the question. If ultimately this court thinks that yes despite the text, the statutory history, the jury instructions, everything else there is still some lingering uncertainty, then I think in that situation the prudent thing to do for this for this court to do would be to certify the question to the court of criminal appeals. I think if at the end of the day the court is not persuaded that that's the best reading of the statute, then yes it probably would be best for the court of criminal appeals to decide this in the first instance given that it's never squarely addressed the issue before. Can I ask you just about the jury instructions? You're apparently going to submit those to us, but what is the process of coming up with jury instructions? The amendments are initially drafted by a committee separate from the court, then they're submitted to the court for final approval. Once the court decides to approve them, then they're issued, like I mentioned before, in the form of what is equivalently a published opinion. It's got a case number, the number I cited. Do they say anything about the instructions or it's just the instructions? No, there's no meaningful commentary more often than not from the court. Yes, yeah. Thank you. Well, if there are no further questions for me from the court, I've got one more question. Why isn't the reference in the last paragraph in the green opinion to dangerous weapon a problem for you? Judge Matheson, I think when you read that line in the opinion as a whole, the only fair way to understand it is that the Court of Criminal Appeals inadvertently said dangerous when it meant deadly, and I don't suggest that lightly, and I'm certain that this court wouldn't likely reach that conclusion either, but I don't see how else to make sense of it when you read the opinion as a whole. The court nowhere else discusses section 645. None of the party's 645. Those uniform jury instructions that were just issued as well would suggest that Green wasn't meant to hold for the first time without any analysis or explanation, without any briefing, that section 645 covers the unborn. And I'll note also, reading that in context, that line comes after an extended discussion of the Hughes case, which held that deadly weapon and homicide statutes cover the unborn. And that line, in fact, begins in sum, as if it's, in effect, summarizing Hughes and its application for the child neglect statute. I think this is one of the exceedingly rare instances in which this court can comfortably conclude that the Court of Criminal Appeals meant to say deadly and not dangerous. Thank you. Thank you, counsel. As to the court's using the term assault and battery with a dangerous weapon in Hughes, I think that that can also be explained by the fact that that statute, once again, I said at the beginning, it does not include the term person. That term person comes from the definition for battery itself, which is why in Green, then, when they talk about all this again, they are, it's not, they're not definitively saying this statute, this statute, this statute. It is talking about the field of assault and battery from homicide to assault and battery with a dangerous weapon. In that regard, have you done an analysis of where person appears in other Oklahoma statutes to determine whether your interpretation of person extends to all references to person and whether that would create some problems in the understanding and and the legislature, at least in terms of the face of this history, took a provision by provision approach and left 645 alone. But there are a lot of other ones that just have person in them as well. Does that mean we have to read this definition of person that you're proposing into everything else? I don't believe into every single statute. Here in Hughes, they were, it was important in all of these cases, they were talking about what is the plain and ordinary meaning in terms of what is the harm trying to be prevented in each of these statutes. How about the kidnapping statute? That uses the word person. Does that mean that, does that mean that if there's a kidnapping, would the kidnapping include the fetus? I suppose potentially, but I think that there... But the legislature didn't, didn't change that either. Right. I mean, you could come up and say yes, person includes that pregnant mother and the You could, but they didn't do that. Correct. And there's probably other examples too. It just seems like you're asking us to make the amendment as this court as opposed to the legislature. What the case law is talking about are these homicide and assault and battery statutes as a How do we know that? Because of the way they analyzed it in Hughes. But those other chapters weren't involved in Hughes. And in each of these. Well, assault and battery was involved because they brought it up. They were analyzing the homicide statute, but then took the time to specifically address and say that they were overturning the ruling in Harbert, which was the A and B with the deadly statute. But what they were analyzing there was the term person within the definitional statute for battery. It's the only way they could be talking about the term person. That's where it comes from. So with that, I wanted to address the Oklahoma jury statutes as well and just remind the court that jury statutes are not definitive. Well, they're not statutes, right? Correct. And, you know, when you're up there as the litigant, you can ask for whatever jury instruction you think is appropriate. And I think here, they were just... Hasn't this court, though, in certain categorical approach cases, look to jury instructions for guidance in determining whether the categorical approach applies? Yes, you can certainly look to them for guidance, though they're not definitive. And the assault and battery with a deadly weapon jury instruction is still assault and battery upon another person with a deadly weapon. And there's no intent to kill required. I also wanted to bring that up. Assault and battery with a deadly started out in its inception with an intent to kill element. And that was dropped along the line. So assault and battery with a deadly weapon is just assault and battery upon the person of another with a deadly weapon. Dangerous is the same thing, but with a dangerous weapon. And so it's kind of strange that assault and battery with a deadly is in this intent to kill section. But really, there's not a huge difference between the two. And so once again, I just really, truly do find it hard to believe that Oklahoma legislature would choose to protect an unborn child in one instance and not in the other, depending on what type of weapon is used. Thank you, counsel. Appreciate the argument this morning. The case will be submitted and counsel are excused.